UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN A GARCIA, *et al*, | § | |
| | § | |
|     Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-360 |
| | § | |
| BANK OF AMERICA, N.A., *et al*, | § | |
| | § | |
|     Defendants. | § | |

## ORDER

John A. Garcia and Desiree Garcia (Garcias) sued Bank of America, N.A. and ReconTrust Company, N.A. (collectively referred to as BOA[1]) under multiple theories regarding the handling of their mortgage debt. D.E. 1-1, pp. 4-15. Before the Court is BOA's Motion for Summary Judgment (D.E. 13) seeking dismissal of all of the Garcias' claims. For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

## FACTS

On or about May 17, 1999, the Garcias purchased their home at 301 Doddridge Street in Corpus Christi, Texas (the Property) with a purchase money note in the amount of $115,894.00 secured by a deed of trust in favor of BOA. D.E. 13-1, 13-2, 13-3. That note was amended and restated as of the same day in the principal amount of $196,488.69. D.E. 13-2.

---

[1] The reference to BOA includes BAC Home Loans Servicing, LLP f/k/a Countrywide Home Loans, Inc., (as named Defendant), as well as BAC Home Loans Servicing, LP (as Defendant BOA has identified it). BOA is the successor by merger to the BAC Defendant and there is no issue in this case regarding the transfer of the note from Countrywide to BOA. D.E. 1.

As the Garcias began repairs to the Property, they discovered water damage covered by their homeowner's insurance. D.E. 17-1. The nature of the repairs made the Property uninhabitable and the Garcias and BOA entered into an agreement abating the payments due under the note during the construction period. *Id*. The construction period was lengthy and the Garcias had to sue the insurance company to enforce the coverage of the repairs. *Id*. Upon resolving that matter in 2005, the Garcias inquired about reinstating the BOA loan.

In the meantime, for several reasons including the fact that the repair costs exceeded the insurance coverage, the Garcias fell behind on their federal taxes. D.E. 17-1. In 2003, the IRS filed a Notice of Federal Tax Lien on the Property in the amount of $8,311.44. D.E. 13-5. Additional liens were filed in 2005 and 2007. D.E. 17-1.

In December 2008, BOA offered to modify the Garcias' loan and tendered to them a proposed modification agreement. D.E. 13-1, 17-1, 17-5. The modified mortgage provided for a new principal balance of $132,598.78, with capitalized delinquent interest, escrow, and fees. D.E. 17-5, p. 4. The offer to modify also provided:

> This offer is contingent on the following:
>
> [BOA's] offer to modify your mortgage is contingent upon [BOA's] verification that the title to the subject property is free from any defect, encumbrance, unauthorized conveyance or any other irregularity. A title search of the subject property will be initiated by [BOA] upon your return of the executed Commitment to Modify Mortgage and the Modification Agreement. In the event the title search, or any other information, indicates any title irregularity, including but not limited to any unauthorized conveyance, or any superior or subordinate lien(s), whether voluntary or involuntary, the Commitment to Modify Mortgage and the

> Modification Agreement and their terms shall not be effective, binding, or enforceable against [BOA], and [BOA's] offer to modify your mortgage shall be immediately revoked without further notice. Upon notification of a filing for protection under a Bankruptcy Stay, this Agreement will be terminated.

D.E. 17-5, p. 5. The Garcias accepted and signed the offer to modify the mortgage, further representing that, at that time, they were in default on the BOA note and had no defenses or offsets against BOA and its right to foreclose. D.E. 13-1, 17-1, 17-2, 17-5, p. 6. At the time, they did not know that their tax liens were considered a cloud on their title. D.E. 17-1.

When BOA performed the title search anticipated by the agreement, it discovered the tax liens against the Garcias' property and revoked the modification. D.E. 13-1. The Garcias had tendered the first payment under the modification agreement (D.E. 17-1, 17-3), but the tender was refused and the Garcias made no additional payments under that agreement. D.E. 13-1.

On June 1, 2009, the Garcias filed for relief under Chapter 13 of the United States Bankruptcy Code. D.E. 13-10, 17-1, 17-6. Their bankruptcy schedules set out a secured debt owed to BOA in the amount of $156,024.00, along with an arrearage of $48,878.00. D.E. 13-11. They claim to have made payments to BOA during the pendency of the bankruptcy case in the amount of $9,200, but they have not been able to confirm whether BOA has credited their account for those payments and BOA's reply (D.E. 18) represents that no payments have been made on the note since July 2007. D.E. 17-1. Also during the bankruptcy case, the Garcias claim to have arrived at an agreement with BOA to

modify the loan, pending an agreement that the IRS liens would be subordinate to the mortgage debt. *Id*. However, that agreement was never finalized. *Id*.

The Garcias' bankruptcy case was dismissed in January 2011. D.E. 13-10, p. 15. At that time, the Garcias sought a modification under the federal government's Home Affordable Mortgage Program (HAMP). BOA denied the HAMP modification request and the loan went into foreclosure. D.E. 17-1. In October 2011, the amount necessary to reinstate the loan was $115,013.02. D.E. 13-1, 13-7. On June 27, 2012, BOA provided the Garcias with a notice of default with an opportunity to cure and, failing cure, intent to accelerate. D.E. 13-1, 13-8. In September 2012, BOA provided the Garcias with notices of foreclosure. D.E. 13-1.

This action was filed in state court on November 2, 2012. D.E. 1-1, p. 3. It was removed to this Court under diversity and federal question (Federal Debt Collection Practices Act) jurisdiction. D.E. 1. BOA has since declined to modify the loan under HAMP because the Garcias have not provided BOA with evidence that the tax liens have been paid and eliminated. D.E. 13-1.

## DISCUSSION

BOA now seeks summary judgment on all of the Garcias' causes of action. Each will be considered in turn.

### A. Texas Deceptive Trade Practices Act

The Garcias conceded in their response (D.E. 17) that the Texas Deceptive Trade Practices Act does not apply to this case. Thus summary judgment in favor of BOA on this cause of action is appropriate.

## B. Breach of Contract

In their pleading, the Garcias make a number of claims with respect to their breach of contract theory. Included are: (1) failure to comply with the modification agreement; (2) improper late charges; (3) improper application of payments; (4) improper charging of fees; and (5) improper acceleration of the debt. BOA argues globally that, by defaulting on the note, the Garcias are not entitled to bring a breach of contract action, citing *Leal v. Bank of New York Mellon*, No. C-12-265, 2012 WL 5465978 (S.D. Tex. Oct. 22, 2012) (Owsley, Mag. Judge)[2] and *Kaechler v. Bank of America, N.A.*, No. H-12-423, 2013 WL 127555 (S.D. Tex. Jan. 9, 2013). The Garcias do not respond to this issue other than with their argument that the modification agreement governed the conduct of the parties and that BOA was the first to breach. It is undisputed, however, that the Garcias had defaulted on the original, restated loan long before the modification agreement had been proposed.

BOA's argument is a misapplication of the Texas rule regarding the ability of a party in default to bring a breach of contract action. The Fifth Circuit has expressed its concern that the rule has uneven application in Texas. *Information Communication Corp. v. Unisys Corp.*, 181 F.3d 629, 632 (5th Cir. 1999) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex. 1981)). This Court observes that borrowers who have defaulted on loans are routinely entitled to enforce the terms of their agreement governing collection actions against them. *See Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex.

---

[2] This Court specifically rejected the Magistrate Judge's holding that a party in default on a loan agreement could not sue for breach of contract in its "Order Adopting Memorandum and Recommendation Regarding Defendants' Motion to Dismiss as Modified." No. 2:12-cv-265, D.E. 13. The *Leal* case was ultimately dismissed for want of prosecution. *Id.*, D.E. 18.

1991); *Abraham v. Ryland Mortg. Co.*, 995 S.W.2d 890, 894 (Tex. App.—El Paso 1999, no pet). It is axiomatic that a debtor's default does not give the creditor carte blanche to, for instance, charge improper fees or fail to apply payments to the account. The Court rejects the argument that the Garcias are precluded from bringing any breach of contract action because of their own default on the loan.

The Garcias' response argues that they accepted the offer of the loan modification that BOA proposed in December 2008. They base their breach of contract action on this modification constituting a novation of the note, which BOA then breached by not accepting their tendered payment and by demanding a greater amount. They suggest that their acceptance of the new agreement is a question of fact that precludes summary judgment.

There is no dispute as to the relevant and material facts. BOA clearly made the offer and the Garcias clearly accepted it. The terms of what they agreed to, in the absence of ambiguity, is a question of law for the Court. *E.g., Ergon-West Virginia, Inc. v. Dynegy Marketing & Trade*, 706 F.3d 419, 424 (5th Cir. 2013) (applying Texas law). There has been no allegation of ambiguity and no briefing regarding any disagreement as to the terms.

According to the undisputed terms of the modification, no agreement would be binding if, upon BOA's title search, an irregularity of title was identified. D.E. 17-5, p. 5. BOA properly identified the tax liens as such an irregularity—superior or subordinate liens. D.E. 13-1. The Garcias have produced no evidence to indicate that the tax liens were not, in fact, valid encumbrances on their Property. They contend only that they

were not aware that the tax liens would have that effect. D.E. 17-1. Their lack of awareness, even if true, does not change the terms of the agreement that they seek to enforce against BOA.

The Garcias argue that BOA may have refused their tender of payment before running the title search,[3] thereby being the first to breach the agreement and thus excusing the Garcias from performing. But BOA did not breach the modification agreement if, by its own terms, the modification agreement was terminated as a result of the tax liens or for any other reason. There is a clear contractual consequence related to the Garcias' undisputed tax liens. The consequence is not that the Garcias are liable for breach but that the contract they seek to enforce—the modification agreement—is unenforceable by its own terms.

Additionally, it is undisputed that the Garcias filed for relief under the United States Bankruptcy Code. D.E. 13-10, 17-1, 17-6. Also under the terms of the modification agreement, that filing necessarily terminated the agreement as of June 1, 2009, if the agreement ever existed. D.E. 17-5, p. 5. Even assuming that BOA was the first to breach and the Garcias were relieved of any breaches of their own, they would still be bound by the terms of the agreement that make it unenforceable. Being relieved of subsequent breaches does not operate to modify the terms that bind the opposing party. Neither the existence of tax liens nor the filing for bankruptcy relief were breaches of the

---

[3] The Garcias have provided no evidence that the title search was performed only after the payment and modification were rejected. The Garcias cannot survive a summary judgment motion based on mere pleadings or speculation. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ( "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

agreement. Instead, they triggered terms by which the agreement terminated as a matter of law.

In this context, the modification agreement is stated to "amend and supplement" the original note. D.E. 17-5. The original note is "restated." *Id*. And the modification contemplates reversion to the terms of the original note and continued collection efforts thereon if the Garcias fail to accept the modification or trigger a termination provision. *Id*. This prevents the modification from being considered a "novation" that eliminates the original note.

To constitute a novation, the agreement must involve (1) a previous, valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *ATC Transport LLC v. Xtra Lease LLC*, No. 13–11–00229–CV, 2013 WL 176119, *2 n.5 (Tex. App.—Corpus Christi 2013, no pet.) (mem. op.). The modification at issue here fails the third and fourth requirements. The old contract was amended, supplemented, and restated rather than extinguished. And the new contract was not valid because the existence of the tax liens caused a revocation of the offer and, alternatively, the Garcias' bankruptcy filing triggered termination.

Thus the Garcias' breach of contract claim is limited to enforcement of the terms of the original, restated note. In that respect, the only evidence offered to support their claim of breach is the representation that they made payments during the course of their bankruptcy, between June 1, 2009 (the date the bankruptcy case was filed) and January

18, 2011 (the date of the final decree). D.E. 13-10; 17-1. BOA claims that no payments have been made (and thus no payments have been applied to the account) since 2007.

There is a question of fact whether all payments that have been made have been credited and the Court holds that that claim survives summary judgment. There is, however, no evidence with respect to any claim regarding the charging of improper fees or late charges. Neither is there evidence of improper acceleration of the debt absent the enforceability of the modification agreement. Those claims are dismissed.

### C. Texas Debt Collection Act

In their petition, filed pursuant to the pleading standards of the Texas Rules of Civil Procedure, the Garcias list four statutory provisions of the TEXAS DEBT COLLECTION ACT (TDCA), TEX. FINANCE CODE § 392.301 et seq., that BOA allegedly violated. The Garcias' summary judgment response addresses only one of those allegations. Each will be addressed below.

First, the Garcias complain of threats to seize, repossess, or sell the Property without taking the proper steps under Texas law or use of proper court proceedings in violation of TEX. FINANCE CODE § 392.301(a)(7). BOA challenges this alleged violation, asserting that it has complied with Texas law in providing proper notices of default, opportunity to cure, intent to accelerate, and intent to foreclose. BOA further alleges that it is entitled to non-judicial foreclosure and is not required to engage in any court proceedings. BOA has submitted evidence of its compliance with foreclosure law and the Garcias have failed to provide controverting evidence and do not address this issue in their response. The Court holds that BOA is entitled to dismissal of this claim.

Second, the Garcias pled that BOA engaged in fraudulent, deceptive, or misleading representations concerning the amount of the debt and the actions that were going to be taken to collect improperly stated amounts in violation of TEX. FINANCE CODE § 392.304. BOA provided evidence of the payment status of the note and averred that all such representations in collection efforts were true. The Garcias failed to submit controverting summary judgment evidence or brief the issue in their response. The Court holds that BOA is entitled to dismissal of this claim.

Third, the Garcias alleged that BOA misrepresented the debt's status in a judicial or governmental proceeding, specifically misrepresenting that the mortgage was delinquent in violation of TEX. FINANCE CODE § 392.304(a)(8). BOA challenged this claim, arguing that the Garcias do not have any evidence of a misrepresentation in a court proceeding. The Garcias failed to submit any evidence to support this claim and do not address it in their response. The Court holds that BOA is entitled to dismissal of this claim.

The only allegation in this series on which the Garcias joined issue is the one regarding misrepresentation of the character, extent, or amount of a consumer debt, specifically with respect to a misrepresentation that amounts were due in violation of TEX. FINANCE CODE § 392.304(a)(8). In particular, the Garcias rely on the December 2008 modification offer and BOA's refusal of the initial payment. D.E. 17, p. 8. They argue that the amount due was the initial payment of $1,890.23 that was required before BOA would consider the modification agreement to have been accepted.

> Section C. Amounts to be paid. You will be required to pay the following on the date the documents are signed for the Modified Mortgage.
>
> [Listing of the net total of fees, late charges, and mortgage payment as $1,890.23].
>
> If you want to accept the offer for a Modified Mortgage upon the terms and conditions above, you must agree by signing the enclosed Modification Agreement which follows this commitment . . . . The acceptance must be signed by each borrower and must be returned to us by January 2, 2009, otherwise the offer will expire.

D.E. 17-5, p. 5. The alleged misrepresentation was BOA's return of the tendered payment as insufficient.

BOA contends that the payment was returned because the modification agreement was revoked according to its terms, as discussed above. Upon revocation of the modification, the issue becomes: what amount was necessary to reinstate the loan? The Garcias have not provided summary judgment evidence to demonstrate that the amount necessary to reinstate the loan was $1,890.23 or less. Therefore, the Garcias have not sustained their summary judgment burden to provide some evidence that the representation—that the payment was insufficient—was false. Consequently, BOA is entitled to summary judgment on this claim.

The Garcias have failed to raise a disputed issue of material fact, supported by summary judgment evidence, that BOA engaged in any conduct violative of the TDCA. BOA is entitled to summary judgment on all claims related to the TDCA.

### D. Federal Fair Debt Collection Practices Act

The Garcias make a number of claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* D.E. 1-1, p. 9. BOA seeks summary judgment on these claims because the Fifth Circuit has held that mortgage lenders and mortgage servicers are not "debt collectors" as defined by the FDCPA and thus cannot be held liable for violations of the Act. *Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed. App'x 424, 428 (5th Cir. 2012); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). In the absence of any contrary argument or evidence, the Court agrees.

In addition, BOA argues that it did not violate any of the provisions of the FDCPA even if that Act governed BOA's conduct. The Garcias did not respond to these arguments or present summary judgment evidence to support them. Even if the Court were to look to the evidence and arguments submitted on the TDCA and apply them to the FDCPA allegations, that evidence does not bear out the Garcias' claims, as set out above, because BOA complied with Texas law and the modification agreement was properly revoked or terminated. BOA is entitled to summary judgment on the FDCPA claims.

### E. Negligence

BOA asserts that the Garcias may not recover on a negligence (tort) theory because their claim is cognizable only in contract. Texas law maintains important distinctions between tort and contract claims, primarily analyzing the source of the duty and the nature of the remedy. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998). Where liability is premised on the breach of an

agreement, the claim ordinarily sounds only in contract. *Id*. If the damages sought are only loss or damage to the subject matter of the contract, the cause of action is ordinarily on the contract. *Id*.

The plaintiff must demonstrate the defendant's duty to act independently of the promise made before failure to perform on a promise will give rise to a cause of action for negligence. *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 n.2 (Tex. 1991) (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 655 (5th ed. 1984)). If no legal duty exists, neither does a cause of action for negligence. *See generally, Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (generally no duty to protect a person from the criminal acts of others).

The Garcias did not respond to this argument.[4] Without the allegation of a separate duty to support a negligence claim, the negligent performance of a contract is not a valid cause of action to recover extra-contractual damages. *See e.g., Jones v. Pesak Bros. Const., Inc.,* 416 S.W.3d 618, 630-31 (Tex. App.—Houston [1st Dist.] 2013, no writ) (denying claim under negligence theory despite claim that actions caused heart attack). BOA is entitled to summary judgment dismissing the Garcias' negligence claims.

---

[4] The Garcias did brief damages that include claims for mental anguish. But their response briefs those damages in relation to their contract and debt collection claims, not any tort duty or negligence claim. D.E. 17, pp. 8-10.

### F. Fraud/Intentional Misrepresentation

BOA challenges the fraud and misrepresentation claims on the basis that the Garcias' allegations are dependent upon a determination that BOA had agreed to the modification and its representations were contrary to the terms of that modification. As set out above, the modification failed according to its own terms. Therefore, BOA's representations, which it claims were consistent with the terms of the original, restated note, cannot be actionable.

The Garcias have not produced any summary judgment evidence that BOA's representations were contrary to the terms of the original, restated note and deed of trust. Their summary judgment response relies exclusively on the theory that the only amount due was $1,890.23 as set out in the modification documents and any representation to the contrary was intentionally false. D.E. 17, pp. 7-8. Because the modification does not govern their relationship, the Garcias have failed to controvert BOA's summary judgment motion with respect to their allegations of fraud or intentional misrepresentation. BOA is entitled to summary judgment on this theory.

### G. Breach of Fiduciary Duty/Defalcation

BOA challenges the breach of fiduciary duty allegations on the basis that neither a mortgage lender nor mortgage servicer owes a fiduciary duty to a borrower and there is no evidence of a special relationship. *See, e.g*, *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1963) (no

fiduciary duty exists in mere debtor-creditor relationship); *Bank One, Tex. N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet denied) (same); *Hinton v. Federal Nat'l Mortg. Ass'n*, 945 F.Supp. 1052, 1060 (S.D. Tex. 1996) (a fiduciary duty does not exist between a loan servicer and its client), *aff'd*, 137 F.3d 1150 (5th Cir. 1998).

Absent additional evidence of a special relationship, this cause of action must fail. The Garcias did not respond to this argument. BOA is entitled to summary judgment dismissing the claims for breach of fiduciary duty.

### H. Breach of the Duty of Good Faith and Fair Dealing

There is no claim for breach of the duty of good faith and fair dealing in a mortgage lending agreement without evidence of special facts. *See generally, English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). The Garcias did not respond to this argument. BOA is entitled to judgment dismissing these claims.

### I. Unjust Enrichment

The theory of unjust enrichment is available only when an express contract does not govern the relationship between the parties. *Nichols v. Heslep*, No. 00-10711, 273 F.3d 1098, 2001 WL 1066919 (5th Cir. Aug. 14, 2001) (citing *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 741 (Tex. App.—Houston [14th Dist.] 2000, no writ) (collecting cases)). The Garcias did not respond to this argument. BOA is entitled to summary judgment dismissing the claims for unjust enrichment.

## CONCLUSION

For the reasons set out above, the Court GRANTS IN PART and DENIES IN PART the motion for summary judgment as follows:

The Court DISMISSES all of the Plaintiffs' claims based on the following theories: (1) Texas Deceptive Trade Practices Act; (2) Texas Debt Collection Act; (3) Federal Fair Debt Collection Practices Act; (4) negligence; (5) fraud or intentional misrepresentation; (6) breach of fiduciary duty or defalcation; (7) breach of the duty of good faith and fair dealing; and (8) unjust enrichment.

With respect to the claims for breach of contract, the Court DISMISSES all of the Plaintiffs' claims for (1) failure to comply with the modification agreement; (2) improper late charges; (3) improper charging of fees; and (4) improper acceleration of the debt. The Court RETAINS claims for breach of the original, restated note with respect to the question of whether all payments made have been credited to the Garcias.

ORDERED this 23rd day of July, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE